## The Boston Franklinite Company vs. The New Jersey Zinc Company.

The complainants were the undisputed owners of all the franklinite and iron ores upon a certain tract, when they were found separate from the zinc, and they claimed to own all the franklinite and iron ores, whether they existed separate from the zinc or not. The defendants were the undisputed owners of all the zinc and other ores on same premises, except franklinite and iron ores, and they *claimed* to own the franklinite and iron ores when they did not exist separate and distinct from zinc ores. Upon bill filed an injunction had been allowed restraining the defendants from mining, carrying away, or using any franklinite or iron ore. It appeared that the ores or minerals were found combined in such varied proportions as to render it often difficult to decide which metal

preponderated in quantity or value in a given specimen, and to render it difficult, if not impossible, to mine either ore without at the same time taking the other. Upon motion being made to dissolve the injunction; on the ground that the whole equity of the bill was denied by the answer, *held—*

1. That the dispute was not about facts, but was a question of legal construction and the proper interpretation of the grants of the mining rights.

2. That the matters in controversy were not of such a nature that they could be met and denied by the answer, so as to entitle the defendants to a dissolution of the injunction as a matter of course.

This was a motion to dissolve an injunction.

*Hayes* and *Bradley*, for motion.

*McCarter* and *Hamilton*, contra.

THE CHANCELLOR. An injunction has been issued out of this court, at the instance of the Boston Franklinite Company, against the New Jersey Zinc Company, restraining the latter from mining, carrying away, or using any franklinite ore or iron ore found or to be found upon part of a tract known as Mine-hill, in the county of Sussex.

The zinc company, having answered the bill, ask a dissolution of the injunction, upon the ground that the whole equity of the bill is denied by the answer.

Neither party owns the soil. Each party is the owner of certain mineral and mining rights.

The zinc company are the *undisputed owners* of all the zinc and other ores found or to be found in or upon the premises, except franklinite and iron ores. They *claim*, also, to own the franklinite and iron ores when they do not exist separate and distinct from the zinc ores.

The franklinite company are the undisputed owners of all the *franklinite and iron ores* when they exist separate from the zinc. They claim, also, to own *all* the franklinite and iron ores in or upon the premises, *whether they exist separate from the zinc or not.*

In the progress of working the mines, upon the premises it has been ascertained that the two ores or minerals are found extensively in mechanical combination, and in such varied proportions as to render it often difficult to decide which metal preponderates in quantity or value in a given specimen, and to render it difficult, if not impracticable, to mine either ore without at the same time taking the other.

The question of title between the parties is, who is entitled to the ores or to work the mine when the ores exist in such mechanical combination?

Another question is necessarily involved in the controversy—where two ores thus exist in mechanical combination, what gives the name to the ore? By what rule is its title to be denominated a zinc or iron ore, to be decided? Is it by the preponderance in quantity of one metal over the other in a given mass or the excess in value that fixes the proper appellation of the ore? If a given specimen contain fifty per cent. of iron, and only twenty per cent. of zinc, is it an *iron* ore? Or if the twenty per cent. of zinc ore in the specimen, though less in quantity, is of greater value than the iron, and will better repay for the labor of working it, does it become a zinc ore?

These are the two questions which are raised by the answer, and which the court, in dissolving the injunction, are called upon to decide.

Now, from the nature of the issues made by the answer, from the very character of the points upon which the controversy turns, it must, I think, be apparent that the answer cannot so deny the equity of the bill as to entitle the defendants to a dissolution of the injunction, according to the well settled practice of a court of equity.

It is not necessary to turn to books in support of the familiar principles that entitle the defendant to a dissolution of the injunction upon the answer. The answer must deny the facts upon which the equity of the bill rests. It

must be a direct and positive denial, not argumentative; it must be of facts within the *knowledge* of the party, and not upon mere belief or opinion.

So far as the answer respects the extent of the rights of the parties under their respective titles and acts of incorporation it is clearly not a fact within the knowledge of the defendants, but a question of legal construction which the defendants cannot settle by an answer, and which the court ought not to decide except upon a final hearing.

So in regard to the character of the ore and its appropriate denomination as a zinc or franklinite ore, the dispute is not so much as to its constituent elements as it is as to its appropriate appellation—not so much as to the thing as to the name. It is not denied that both minerals are present in the mass existing in close mechanical combination, nor is the dispute mainly in relation to the relative proportion of the two elements. The apparent conflict in the evidence upon this point may be fairly attributable to the fact, that the witnesses refer to different specimens, or different veins, or different portions of a vein of ore. But in speaking of the same ore, one witness says, it is a very superior iron ore, it contains over 60 per cent. of pure franklinite; another witness speaking of the same ore says, I call it a very rich zinc ore, it contains 30 per cent. of pure zinc. Now there is no dispute or contradiction in regard to the fact. The simple fact is, that the mass contains (upon the hypothesis stated) 60 per cent. of franklinite, 30 per cent. of zinc, and 10 per cent. of other earths or minerals. The witnesses differ only as to the name by which the mass shall appropriately be called, and that difference produced solely by the different standards which the witnesses adopt as the ground of their opinion. When, therefore, the answer affirms and the witnesses testify, that the ore in question is a rich zinc ore, it does not deny the fact upon which the equity of the bill rests, and which the

complainants' witnesses affirm, that it is a valuable franklinite ore, and one in which that metal decidedly preponderates over the zinc.

In fact the entire structure of the answer, the character of the evidence adduced in support of it, and every step in the very able and discriminating argument by which the positions of the answer were sought to be sustained, demonstrate that the entire controversy is not a dispute about facts, but is a question of legal construction and the proper interpretation of the grants.

These are matters which cannot be met and denied by an answer. They are questions moreover which, considering the nature of this controversy and the magnitude of the interests at stake, ought not to be decided except upon the final hearing.

On the hearing of the motion, a large portion of the testimony of one of the parties, which was otherwise competent, was excluded in compliance with a rule of the court. A decision upon the merits under such circumstances could not be satisfactory, and would only tend to embarrass and protract the controversy. On this ground, notwithstanding the very full and satisfactory argument, upon both sides, of the legal questions involved, I purposely and scrupulously abstain from any intimation of opinion upon the merits of the controversy.

The motion to dissolve the injunction must be denied.

The injunction however, as it now stands, is too broad and indefinite in its terms. It restrains the zinc company not only from mining, carrying away, or using any franklinite ore or iron ore on the premises, but also any of the ores and minerals in controversy in the cause. If by the ores and minerals in controversy is meant simply franklinite and iron ore, the clause is unnecessary. If more is meant it is wrong. The franklinite and iron ores are all the franklinite company are entitled to. If it be true, as the defendants contend, that the ore which they are mining and using is not franklinite, but zinc ore, the in-

junction, thus modified, will not interfere with their operations. If on the other hand, it shall prove that these ores are found in such close mechanical combination that neither can be successfully worked without mining both, then it is necessary that the limits of the rights of the respective parties under their grants shall be clearly defined before either party can safely and successfully carry on mining operations.

This modification of the injunction may, I am aware, give rise to embarrassment upon a question of the alleged violation of the injunction. It will, however, also lead, if the parties act in good faith, to a speedy determination of the case upon its merits.

NOTE.—Immediately after the modification of the injunction the defendants commenced removing the ores in controversy. An application was thereupon made to restrain the defendants from proceeding founded upon affidavits that the ores which were being removed were franklinite, and not zinc. The order applied for was granted, thus virtually restoring the injunction to its original form.